UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sacramento Suburban Water District,<br><br>   Plaintiff,<br><br>   v.<br><br>The 3M Company, et al.,<br><br>   Defendants. | No. 2:22-cv-01005-KJM-JDP<br><br>ORDER |

Plaintiff Sacramento Suburban Water District (the District) brings this water contamination action against defendants the 3M Company, E. I. Du Pont De Nemours and Company (Du Pont), and the Chemours Company. 3M moves to dismiss this action for lack of personal jurisdiction and failure to state a claim. Du Pont and Chemours move to dismiss for lack of personal jurisdiction. Because there are insufficient facts to determine whether this court can exercise personal jurisdiction over defendants, the court **grants the District's request for jurisdictional discovery**. Given that the court's jurisdiction over defendants remains unsettled, the court **denies without prejudice defendants' motions to dismiss**.

I.   **BACKGROUND**

The District is a public drinking water provider that owns and operates drinking water wells across Sacramento County. Compl. ¶ 12, ECF No. 1. Those wells have been contaminated

with toxic per- and poly-fluoroalkyl substances (PFAS). *Id.* ¶ 1. PFAS chemicals, often called "forever chemicals," have special characteristics that cause extensive environmental contamination. *Id.* ¶¶ 3, 38–39. They are mobile, soluble, and migrate long distances, but "they do not readily biodegrade or chemically degrade in the environment" or even in conventional treatment systems. *Id.* ¶ 38. These features make them difficult and expensive to remove. *Id.* In turn, their omnipresence has resulted in the bioaccumulation of PFAS in people, which is linked to a variety of serious public health impacts including kidney cancer and pregnancy complications. *Id.* ¶¶ 39–42.

Although the District identifies 32 specific types of PFAS chemicals involved in this lawsuit, there are more than 3,000 kinds of PFAS, including PFOA, PFOS, and PFHxS.[1] *Id.* ¶¶ 35–36. This "entirely manmade" family of chemicals has been used for decades in a variety of household and commercial products. *Id.* ¶ 37. PFAS have been incorporated into "dental floss, furniture and carpet coatings, food wrappers, household and commercial pesticides, nonstick pans, clothing," and other products. *Id.* Because PFAS have such widespread uses, they can enter the environment from industrial manufacturing facilities, consumer and commercial applications, and after disposal in landfills. *Id.* ¶¶ 42–44.

Defendants are chemical companies that designed, manufactured, marketed, and sold PFAS and products containing PFAS. *Id.* ¶ 7. Since the 1940s, 3M was the primary manufacturer of PFAS in the United States and marketed PFOA and PFOS in a variety of products including its Scotchgard brand of stain repellant. *Id.* ¶ 51. 3M operates four manufacturing plants in California, three of which have manufactured PFAS products. *Id.* ¶ 13. Since 1951, Du Pont produced and sold polytetrafluoroethylene (PTFE) products, which required the use of PFOA for production. *Id.* ¶ 55. Du Pont marketed these products under the "Teflon" trade name. *Id.* Du Pont used its PTFE in a variety of products, including a sprayable coating, a lubricant, a coating for medical equipment, and an oxidizer in flares. *Id.* 3M and Du Pont were

---

[1] PFOA is the acronym for perfluorooctanoic acid; PFOS stands for perfluorooctanesulfonic acid; PFHxS is perfluorohexanesulfonic acid. *Id.* ¶ 35(a), (b), (e).

the sole manufacturers of PFOA in the United States, while 3M was the only domestic manufacturer of PFOS and PFHxS. *Id.* ¶¶ 58, 52.

For more than 50 years, 3M and Du Pont had reason to be concerned about the environmental hazards of their PFAS chemicals, including the widespread contamination of groundwater used for public drinking water and corresponding adverse effects on human health. *Id.* ¶¶ 61–84. Nevertheless, defendants actively "suppress[ed] scientific research" and concealed the scope of the contamination and its risk to human health, even to the U.S. Environmental Protection Agency. *Id.* ¶¶ 81, 83, 86–88. Ultimately, 3M ceased production in the early 2000s and Du Pont ended sales in 2013. *Id.* ¶ 57. Du Pont spun off its wholly owned subsidiary Chemours in July 2015 as a separate, publicly traded company. *Id.* ¶ 16. Chemours took control of Du Pont's PFAS business, including by assuming all or part of Du Pont's liabilities for PFAS products. *Id.*

The District brings this action against defendants to recover costs associated with the contaminated well water and to abate the ongoing harm posed by PFAS chemicals. *Id.* ¶ 2. Du Pont and Chemours move to dismiss for lack of personal jurisdiction. *See* EID/CC Mot., ECF No. 8. 3M moves to dismiss for lack of personal jurisdiction and for failure to state a claim. *See* 3M Mot., ECF No. 9. The District opposes both motions. *See* Opp'n to EID/CC, ECF No. 28; Opp'n to 3M, ECF No. 29. Defendants replied. *See* EID/CC Reply, ECF No. 32; 3M Reply, ECF No. 34.

The court held a hearing on October 7, 2022. Hr'g Mins., ECF No. 39. Stephanie Biehl appeared for the District. J. Thomas Boer represented 3M, and Adam Rapp appeared for Du Pont and Chemours. Counsel informed the court that a similar matter is proceeding in the Eastern District of New York: *Water Authority of Western Nassau County v. The 3M Company et al.*, Case No. CV-19-4608 (GRB) and related cases. Counsel noted the court there granted jurisdictional discovery and resolved the motions by bench order. This court requested and the District filed a transcript of the *Water Authority* hearing. Biehl Ltr., ECF No. 42.

## II.  ANALYSIS

No federal statute governs personal jurisdiction in this case, so the court must determine whether California courts could exercise jurisdiction over defendants. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). California authorizes its courts to exercise jurisdiction "to the full extent permissible under the U.S. Constitution[.]" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see* Cal. Code Civ. Pro. § 410.10. As a result, this court's personal jurisdiction turns on the limits of the Fourteenth Amendment's Due Process Clause. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).

Since the Supreme Court's decision in *International Shoe Co. v. Washington*, federal courts have assessed whether the exercise of jurisdiction comports with the Due Process Clause by determining if the defendant had "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (citation omitted). "In giving content to that formulation, the Court long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Meyers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779 (2017)).

The Supreme Court has recognized two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. *See id.* "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Here, the District concedes this court does not have general jurisdiction, because defendants are neither incorporated nor headquartered in California. *See* Opp'n to EID/CC at 4 n.1; Opp'n to 3M at 5 n.1. Accordingly, the sole jurisdictional question for this court is whether there is specific jurisdiction.

### A.  Specific Jurisdiction

In the Ninth Circuit, courts use a three-part test to determine whether the defendant's contacts with the state suffice to support the exercise of specific jurisdiction. *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). First, a plaintiff must show the

4

out-of-state defendants purposely directed activities to the forum state, conducted business with the forum or its residents, or otherwise "purposefully avail[ed] [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Second, the claim must "arise[] out of or relate[] to the defendant's forum-related activities[.]" *Id.* Third, the exercise of jurisdiction must be reasonable[.] *Id.* The plaintiff bears the burden of establishing the first two prongs, after which the burden shifts to the defendant to show the exercise of jurisdiction would be unreasonable. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017).

Here, the parties' dispute centers on the second prong: whether the District has alleged sufficient facts to establish its claims arise out of or relate to defendants' contacts with California. *See* EID/CC Mot. at 6; 3M Mot. at 6; Opp'n to EID/CC at 5; Opp'n to 3M at 6. All the parties invoke the Supreme Court's recent decision in *Ford Motor Co.*, claiming the decision supports their position. A brief review of the case reveals why. In *Ford Motor Co.*, there was no dispute that Ford did "substantial business" in Montana and Minnesota and that the resident-plaintiffs' cars allegedly malfunctioned in the forum states. 141 S. Ct. at 1026. But Ford claimed personal jurisdiction could attach only (a) "where Ford sold the car in question," or (b) "where Ford designed and manufactured the vehicle." *Id.* The Court disagreed, explaining (1) each complaint alleged a defective Ford vehicle caused an injury, and (2) "Ford had advertised, sold, and serviced those two car models in both States," creating "a strong 'relationship among the defendant, the forum and the litigation.'" *Id.* at 1028 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Thus, the Court concluded an in-state injury caused by defective products, which were "extensively promoted, sold, and serviced" in the state, sufficed to establish personal jurisdiction, regardless of where those particular cars were sold. *Id.* at 1032. In addition, the Court emphasized there is no requirement of "proof of causation" between contacts and injury; instead, a defendant "serv[ing] a market for a product in the forum State and the product malfunction[ing] there" is sufficient. *Id.* at 1026, 1027.

5

In this case, the parties dispute whether defendants did, in fact, "serve[] a market" for the products that malfunctioned in California. *Id.* at 1027. The District generally alleges 3M, Du Pont, and Chemours manufactured, marketed, distributed, and sold PFAS products in California for many years. *See* Compl. ¶¶ 13–17. Now, the District's wells produce drinking water contaminated with PFAS. *Id.* ¶¶ 33, 93–95. But defendants claim the District does not allege facts to show the groundwater contamination arises from or relates to defendants' conduct regarding particular PFAS products in California. 3M Mot. at 12–14; EID/CC Mot. at 8–13. Specifically, defendants argue, first, the allegations tying the District's claims to the California conduct are "conclusory," and second, the District's factual allegations are insufficient because they do not show the claims arise out of or relate to the California conduct. 3M Mot. at 13; EID/CC Mot. at 13. The court addresses these arguments in turn.

First, defendants argue the District relies too much on conclusory statements in the complaint to show defendants served a market for PFAS in California. The District must meet the plausibility pleading standard laid out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which the Ninth Circuit has adopted for "personal jurisdiction questions[.]" *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012), *rev'd on other grounds*, 571 U.S. 277 (2014). Under that standard, "factual allegations" are assumed to be true, but "conclusions" are not. *Iqbal*, 556 U.S. at 678. As a result, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

The District's opposition to defendants' motions relies heavily on conclusory allegations in the complaint, such as the statement that defendants "designed, manufactured, marketed, sold and/or distributed large quantities of PFAS-containing and/or other PFAS Products in California, including in the Sacramento area." Compl. ¶ 59; *see id.* ¶ 60; Opp'n to EID/CC at 14; Opp'n to 3M at 12, 16. At hearing, when the court asked the District's counsel to identify with particularity the complaint's allegations linking defendants' PFAS conduct to California, counsel again pointed to conclusory statements. *See, e.g.*, Compl. ¶¶ 32 ("PFAS in the aquifer comes from Defendants' PFAS Products that were used and disposed of or otherwise released in the area

6

1   overlying the NAS[2] groundwater aquifer."), 56 ("DuPont produced numerous other PFAS
2   Products, and it marketed and sold PFAS products throughout the United States, including in
3   California and in the Sacramento area."), 131 ("Defendants' acts and omissions, including their
4   manufacture, promotion, marketing, sale, distribution, supply, defective design of, and/or failure
5   to warn regarding PFAS in their products, contaminated Plaintiff's wells."). These allegations
6   "are no more than conclusions," and so they "are not entitled to the assumption of truth." *Iqbal*,
7   556 U.S. at 679.  In the absence of concretely factual allegations, plaintiff's conclusions do not
8   render plausible their assertion that the District's contaminated groundwater arises out of or
9   relates to defendants' California conduct.

10          Second, defendants claim the District's allegations do not link their claims to any
11  California conduct.  The District's complaint does incorporate several factual allegations about
12  defendants' California conduct.  It alleges 3M operates four manufacturing plants in California, at
13  least three of which have manufactured "PFAS Products[.]"  Compl. ¶ 13.  The District also
14  alleges Du Pont employs workers, conducts research on PFAS, and contracts with distributors in
15  California.  *Id.* ¶ 15.  The District simultaneously admits "[t]here are more than 3,000 different
16  types of PFAS."  *Id.* ¶ 36.  Although the District alleges 3M manufactures PFAS products in
17  California and Du Pont conducts research on PFAS in California, it does not link any specific
18  PFAS chemicals that contaminate the District's groundwater to defendants' California conduct.
19  Unlike in *Ford Motor Co.*, where the plaintiffs alleged in-state marketing, sales, and servicing of
20  the specific types of cars that then malfunctioned, the District does not specify which PFAS
21  products were manufactured, advertised, or researched in California.  As a result, the District has
22  not at this time linked defendants' actions in California to the contamination of the groundwater
23  with "PFOA, PFOS, PFBS, PFHpA, PFHxS, and PFHxA."  *Id.* ¶ 33.  Instead, the complaint's
24  factual allegations could support the inference that the groundwater contamination is unrelated to

---

[2] NAS is the acronym for the North American Sub-basin, a 548 square mile groundwater basin located in California's Sutter, Placer, and Sacramento counties; the District's wells are located within the surface boundaries of the NAS.  *Id.* ¶ 31.

7

defendants' California conduct because that conduct involves other PFAS compounds.  Such uncertainty raises a doubt about this court's jurisdiction over defendants.

In response, the District argues defendants' "[e]xtensive nationwide sales" mean they served a California market for PFAS products and claims it does not need to link any particular PFAS product to California.  Opp'n to EID/CC at 6.  The District cites two cases rejecting an interpretation of *Ford Motor Co.* that requires in-state conduct to exactly match the products that caused the harm.  *See* Opp'n to 3M at 9 (citing *Godfried v. Ford Motor Co.*, No. 19-0372, 2021 WL 1819696 (D. Me. May 6, 2021), and *Sibley v. Air & Liquid Sys. Corp.*, No. 20-7697, 2021 WL 2688819 (N.D. Cal. June 30, 2021)).  At hearing, the District relied on these cases to claim its allegations are sufficient, pointing primarily to *Godfried*.  This reliance on *Godfried* is unavailing.

In *Godfried*, a Maine resident alleged he was injured by a defect in a specific component of the Rear Attached Mower Series 501.  2021 WL 1819696, at *1.  The defendant-manufacturer claimed the court could not exercise personal jurisdiction because there were no factual allegations linking the Series 501 Mower to the manufacturer's Maine conduct.  *Id.*  The court disagreed.  It explained, even if there are no allegations that the defendant marketed or sold the particular product in the forum state, specific jurisdiction "can still attach where the defendant's contacts are only marginally more attenuated." *Id.* at *5.  The *Godfried* court found the defendant-manufacturer's rear mower conduct sufficed in the absence of specific allegations regarding 501 rear mowers—the 501 series apparently being a type of rear mower. *Id.* at *7; *see id.* at *5 n.5 ("The parties offer no evidence as to how rear mowers are classified . . . ."). It concluded specific jurisdiction attached because the defendant-manufacturer extensively marketed and sold rear mowers throughout Maine during the relevant time period. *Id.* at *5.  The court noted the defendants' advertisements "d[id] not specify *any* particular type of rear mower[.]" *Id.* at *5 n.5 (emphasis in original).  Moreover, based on depositions taken during jurisdictional discovery, the resident-plaintiff alleged the defendant-manufacturer was unable to distinguish manufacturing, distribution, advertising, or sales information between rear mowers in general and 501 rear mowers. *See id.* at *1–2.  Accordingly, the resident-plaintiff's rear mower

1    allegations likely included 501 rear mowers, and there was no apparent way to distinguish the
2    products. *See id.*

3    Even if this court agreed with *Godfried*'s interpretation of *Ford Motor Co.* – and it is not
4    inclined to --, the District's allegations here still fall short. The District does not allege even
5    "marginally more attenuated" conduct. *Id.* at *5. In other words, the District does not allege
6    specific California chemical advertising or sales by defendants that mirrors the *Godfried*
7    plaintiff's allegations and quotations of specific advertisements in the *Farm Journal* publication
8    circulated in Maine. The District also does not allege that distinguishing defendants' California
9    conduct based on particular PFAS products is impracticable.

10   In addition, even if *Ford Motor Co.* does not require an "exact-product theory," Opp'n to
11   3M at 9, the Court's decision does require a stronger relationship between forum contacts and the
12   alleged injury than that supported by the District's factual allegations. The District must plead
13   defendants' California conduct relates to the groundwater contamination they complain of by, at
14   least, alleging defendants' forum conduct regarding a particular PFAS chemical that now
15   contaminates the groundwater. The District's other cited cases show why its current allegations
16   are not sufficient.

17   In *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, the plaintiff's claims were
18   linked to the defendants' in-state conduct because the plaintiff traced a specific type of PFAS to
19   marketing and sales nationwide, including contacts to create that chemical within the forum state.
20   *See* No. 18-2873, 2022 WL 678992, at *6 (D.S.C. Jan. 27, 2022). Moreover, the plaintiff's
21   complaint involved extensive allegations about a particular PFAS-containing end product
22   (aqueous film-forming foam or AFFF), how it was used, where it was advertised, and why it was
23   certainly used in the forum state. *Id.* at *1, *5. Similarly specific allegations were pled in the
24   other cited cases. *See, e.g.*, *SUEZ Water N.Y. Inc. v. E. I. Du Pont De Nemours & Co., et al.*,
25   578 F. Supp. 3d 511, 530–32 (S.D.N.Y. 2022) (describing how and when defendants licensed and
26   sold PFAS products in forum state, and to what types of customers); *Sibley*, 2021 WL 2688819, at
27   *3 (explaining decedent worked on asbestos-containing pump during time period when defendant
28   supplied asbestos-containing pumps in forum state); *Hardwick v. 3M Co.*, No. 18-1185,

2019 WL 4757134, at *16 (S.D. Ohio Sept. 30, 2019) (discussing how plaintiff firefighter was exposed to PFAS chemicals through fire-fighting foams). In contrast, the District's complaint lacks similar allegations.

The District does not identify a particular type of PFAS used or manufactured in California, nor specify how or where it was advertised. The closest the District comes is its allegations regarding 3M's manufacturing plants and Du Pont's "Teflon" brand comprising PTFE, a type of PFAS. Compl. ¶¶ 13, 55. However, these allegations do not identify any specific PFAS products or the PFAS chemicals used at defendants' plants, and do not include factual allegations linking Teflon to California. These omissions mean there is an insufficient link between defendants' conduct in California and the District's groundwater contamination. To survive dismissal ultimately, the District must allege at least one example to tether the District's claims to defendants' contacts with California, and establish this court's ability to exercise personal jurisdiction over defendants. *See generally In re: Aqueous Film-Forming Foams*, 2022 WL 678992.

In sum, the District's factual allegations do not establish personal jurisdiction over defendants.

**B.     Discovery Request**

Anticipating this court's conclusion, the District seeks leave to conduct "limited jurisdictional discovery" if the complaint's allegations are inadequate. Opp'n to 3M at 20; Opp'n to EID/CC at 12. District courts are vested with "broad discretion" to permit or deny jurisdictional discovery. *Butchers Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). Such discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). A request "based on little more than a hunch" is insufficient. *Id.* (citing *Butchers Union*, 788 F.2d at 540). If the evidence sought would not "change the analysis," then discovery is not required. *Sky Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 69 (9th Cir. 2021).

Defendants claim the District seeks jurisdictional discovery "in a broad, wide-ranging fishing expedition based on" a hunch that its claims relate to defendants' California conduct. 3M Reply at 4–5; *see also* EID/CC Reply at 6–8. But the District's request is predicated on more than a hunch. The District alleges 3M is the only known domestic manufacturer of PFOS and PFHxS and has three facilities manufacturing PFAS products in California. Compl. ¶¶ 13, 52. Further, the District alleges Du Pont conducts research relating to PFAS products in California, works to distribute PFAS products in California, and along with 3M, was the only domestic manufacturer of PFOA. *Id.* ¶¶ 15, 58. The District offers extensive allegations regarding 3M and Du Pont's decades-long awareness of PFAS groundwater contamination and efforts to conceal the immense hazards the contamination posed. *Id.* ¶¶ 61–88. Now, PFHxS and PFOA, along with other PFAS chemicals, contaminate the District's wells. *Id.* ¶ 33.

The sole missing factual link is a supportable allegation that defendants' California conduct regarding a particular PFAS chemical contaminates the District's wells. Given that 3M and Du Pont were the only domestic manufacturers for several PFAS chemicals found in the wells, the District's request does not appear "to be a fishing expedition in search of a jurisdictional hook." *Sky Optic*, 843 F. App'x at 69. Instead, the District seeks specific facts to bolster its conclusory statement that defendants "designed, developed, manufactured, marketed, sold, distributed, supplied, transported, handled, used, released, and/or disposed of PFAS Products in California[.]" Compl. ¶ 60. Such an inquiry is tailored to produce the "more satisfactory showing of the facts . . . necessary" for the court to exercise personal jurisdiction over defendants. *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc*, 557 F.2d at 1285 n.1). Jurisdictional discovery is warranted here. *Cf.* Hr'g Tr. at 47:25–48:01, Biehl Ltr., ECF No. 42-1 (court explaining from bench in *Water Authority* case that "record needs to be more developed before we go forward").

The District's specificity in its discovery request confirms its appropriateness. Despite defendants' statements to the contrary, *see* EID/CC Reply at 8; 3M Reply at 4–5, the District has identified particular discovery it says it needs to establish personal jurisdiction: (1) information on the manufacture and sale of PFAS products in California by defendants, (2) the customers in

11

California to whom defendants sold PFAS products, (3) quantities of PFAS products sold in and shipped to California by defendants, (4) defendants' marketing materials directed at California regarding their PFAS products, (5) any warnings defendants issued to consumers or users of PFAS in California, and (6) any other information uniquely in defendants' possession or knowledge about their California contacts relating to this case. *See* Opp'n to EID/CC at 14; Opp'n to 3M at 20.

The evidence the District seeks, for the most part, will allow the court ultimately to make a fully-informed, reasoned decision regarding jurisdiction. One area of proposed discovery, area 6 seeking any other information uniquely in defendants' possession about their California contacts related to this case, is overbroad however. Jurisdictional discovery will be limited to the first five areas.

### III.     CONCLUSION

The District has not established the court has personal jurisdiction over defendants. But the District has shown that a more satisfactory showing of the facts is necessary and likely with limited discovery, and so the court **grants limited jurisdictional discovery.** Discovery is confined to the following five areas: (1) information on the manufacture and sale of PFAS products in California by defendants, (2) the customers in California to whom defendants sold PFAS products, (3) quantities of PFAS products sold in and shipped to California by defendants, (4) defendants' marketing materials directed at California regarding their PFAS products, and (5) any warnings defendants issued to consumers or users of PFAS in California.

**Jurisdictional discovery shall be completed within 90 days of the filed date of this order.** "Completed" means not only that discovery itself is concluded, but also that any discovery disputes are fully resolved. The District may seek leave to amend its complaint following the completion of jurisdictional discovery, with **any motion seeking leave filed by 14 days after the discovery deadline**. The scheduling conference is SET for April 27, 2023.

/////

/////

/////

12

1    Defendants' motions to dismiss are **denied without prejudice**.

2    This order resolves ECF Nos. 8, 9.

3    IT IS SO ORDERED.

4    DATED: November 10, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE